## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FIREFIGHTERS CREDIT UNION, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>THE HOME DEPOT, INC.,<br><br>　　　　　　　　Defendant. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Firefighters Credit Union on behalf of itself and all others similarly situated, alleges the following:

### INTRODUCTION

1.     Beginning around April of 2014 and continuing into September 2014, Home Depot, through its negligence, suffered what may prove to be the largest breach of customer data in United States history (hereinafter, the "Home Depot Data Breach"). The Home Depot Data Breach left vulnerable Home Depot's store customers' names, credit and debit card numbers, card expiration dates, and card

35311

1

verification values ("CVVs"), as well as the states and ZIP codes of the stores associated with individual card transactions.

2.     As a result of the Home Depot Data Breach, Firefighters Credit Union ("Plaintiff") and other financial institutions will have to: (a) cancel or reissue any previously issued card that contains a magnetic stripe, microprocessor chip, or other means for storage of information which includes, but is not limited to, a credit card, debit card, or stored value card affected by the Home Depot Data Breach; (b) close any deposit, transaction, checking, or other accounts owned by a person using a credit card, debit card, or stored value (hereinafter "cardholder") affected by the Home Depot Data Breach, including but not limited to stopping payments or blocking transactions with respect to the accounts; (c) open or reopen any deposit, transaction, checking, or other accounts affected by the Home Depot Data Breach; (d) refund or credit any cardholder to cover the cost of any unauthorized transaction relating to the Home Depot Data Breach; (e) notify cardholders affected by the Home Depot Data Breach; (f) respond to a higher volume of cardholder complaints, confusion, and concern; and (g) increase fraud monitoring efforts. Plaintiff has already incurred the cost of cancelling/reissuing numerous debit cards for its customers affected by the Home Depot Data Breach.

35311

3.     As a result of the Home Depot Data Breach, Plaintiff and other financial institutions will lose revenue as result of a decrease in the use of a credit card, debit card, or stored value.

4.     As alleged herein, the injuries to Plaintiff and the Class were, and continue to be, directly caused by Defendant's failure to maintain adequate computer data security.

5.     Plaintiff and the Class seek to recover damages caused by Defendant's negligence, as set forth herein.

## PARTIES

6.     Plaintiff Firefighters Credit Union is a federally chartered credit union with its principal place of business located in LaCrosse, Wisconsin.

7.     Defendant The Home Depot, Inc. is a Delaware corporation with its principal place of business located in Atlanta, Georgia. Home Depot operates a chain of retail stores that sell a wide variety of merchandise, including tools, home goods, and construction supplies. Home Depot operates over 2,200 stores in the United States.

## VENUE AND JURISDICTION

8.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other

35311

members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of States other than Defendant's state of citizenship.

9.    This Court has personal jurisdiction over Defendant, as Defendant's principal place of business is in the District. Additionally, Defendant conducts sufficient business in this state to satisfy due process. Throughout the relevant time period, Defendant owned and operated over 2,200 Home Depot Stores through the United States, including in this District.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because during the class period Home Depot resided in this District, regularly transacted business in this District, and a substantial part of the events giving rise to this Complaint arose in this District.

## FACTUAL BACKGROUND

## Credit Card Processing

11.    Firefighters Credit Union and the members of the Class are financial institutions that issue payment cards, including debit and credit cards, and/or perform, facilitate, or support card issuing services on behalf of their customers. Plaintiff's customers used these payment cards to make purchases at Home Depot stores during the period of the Home Depot Data Breach.

35311

4

12. Home Depot stores accept customer payment cards for the purchase of goods and services. At the point of sale ("POS"), these cards are swiped on a POS terminal, and a personal identification number or some other confirmation number is entered, or a receipt is signed to finish the transaction on behalf of the customer.

13. When the card is swiped, the merchant (e.g. Home Depot) uses the payment processing networks (e.g. Visa or MasterCard) to transmit a request for authorization to the institution which issued the payment card (e.g. Plaintiff). If the issuing institution authorizes the payment, the merchant electronically forwards a receipt of the transaction to another financial institution known as the "acquiring bank," which contracts with the merchant to process credit and debit card transactions. The acquiring bank forwards the funds to the merchant to satisfy the transaction, and is then reimbursed by the card-issuing institution (Plaintiff). The issuing institution posts the debit or credit transaction to its customer's account.

14. Given the extensive network of financial institutions involved in these transactions and the sheer volume of daily transactions using credit and debit cards, it is unsurprising that financial institutions and credit card processing companies have issued rules and standards governing the basic measures that merchants must take to ensure consumers' valuable data is protected. The card processing networks issue regulations ("Card Operating Regulations") that are enforceable upon Home

35311

5

Depot as a condition of Home Depot's contract with its acquiring bank. The Card Operating Regulations prohibit Home Depot (or any merchant) from disclosing any cardholder account numbers, personal information, magnetic stripe information, or transaction information to third parties other than the merchant's agent, the acquiring bank, or the acquiring bank's agents. Under the Card Operating Regulations, Home Depot was required to maintain the security and confidentiality of debit and credit cardholder information and magnetic stripe information and protect it from unauthorized disclosure.

15.    Similarly, the Payment Card Industry Data Security Standards ("PCI DSS") are a list of twelve information security requirements that were promulgated by the Payment Card Industry Security Standards Council.[1] They apply to all organizations and environments where cardholder data is stored, processed or transmitted and require merchants like Home Depot to protect cardholder data, ensure the maintenance of vulnerability management programs, implement strong access control measures, regularly monitor and test networks, and ensure the maintenance of information security policies. As part of Home Depot's agreements

---

[1] Payment Card Industry (PCI) Data Security Standard: Requirements and Security Assessment Procedures, Version 3.0, at 5 (November 2013), *available at* https://www.pcisecuritystandards.org/documents/PCI_DSS_v3.pdf , at pg. 5 (last visited September 25, 2014).
35311

6

with Visa and MasterCard, Home Depot represented that it would be compliant

with PCI DSS. The twelve requirements are:

## Build and Maintain a Secure Network

(1) Install and maintain a firewall configuration to protect cardholder data

(2) Do not use vendor-supplied defaults for system passwords and other

security parameters

## Protect Cardholder Data

(3) Protect stored cardholder data

(4) Encrypt transmission of cardholder data and sensitive information across

open, public networks

## Maintain a Vulnerability Management Program

(5) Protect all systems against malware and regularly update anti-virus

software or programs

(6) Develop and maintain secure systems and applications

## Implement Strong Access Control Measures

(7) Restrict access to cardholder data by business need-to-know

(8) Identify and authenticate access to system components

(9) Restrict physical access to cardholder data

35311

## Regularly Monitor and Test Networks

(10) Track and monitor all access to network resources and cardholder data

(11) Regularly test security systems and processes

## Maintain an Information Security Policy

(12) Maintain a policy that addresses information security for all personnel

16.    Home Depot was at all times fully aware of its data protection obligations, which emanated from its participation in the payment card processing networks and its daily collection and transmission of tens of thousands of sets of payment card data.

17.    As a result of its participation in the payment card processing networks, Home Depot knew that, in each instance when it accepted payment cards for a purchase at one of its stores, its customers and the financial institutions which issued the payment cards to the customers were trusting that Home Depot would keep its customers' sensitive financial information secure from would-be data thieves.

18.    Home Depot knew that if it failed to secure its customers' sensitive financial information, the financial institutions issuing the payment cards to their customers, i.e., Plaintiff and the members of the class, would suffer harm in the form of having to notify customers, close out and open new customer accounts,

35311

8

reissue customers' cards, and/or refund customers' losses resulting from the unauthorized use of their accounts, and additionally, suffer lost revenues as a result of decreased usage of their customers' debit/credit cards.

### The Home Depot Data Breach

19.     On September 2, 2014, data security blogger Brian Krebs reported that "Multiple banks say they are seeing evidence that Home Depot stores may be the source of a massive new batch of stolen credit and debit cards that went on sale this morning in the cybercrime underground."[2] Home Depot said at that time only that it was "looking into some unusual activity," and that it was not ready to confirm that a data breach had occurred.[3]

20.     On September 8, 2014, Home Depot confirmed the breach and revealed that the breach may have affected any customer at any Home Depot store in the United States and Canada who made in-store purchases between April, 2014 and early September, 2014.[4] Home Depot further indicated that it was not aware of

---

[2] See *Banks: Credit Card Breach at Home Depot*, KREBS ON SECURITY, http://krebsonsecurity.com/2014/09/banks-credit-card-breach-at-home-depot/ (Sept. 2, 2014 1:05 PM).

[3] *Id.*

[4] *The Home Depot Provides Update on Breach Investigation*, THE HOME DEPOT, http://phx.corporate-ir.net/phoenix.zhtml?c=63646&p=RssLanding&cat=news&id=1964976 (last visited September 24, 2014).

35311

the breach until it received notification from banks and law enforcement on September 2, 2014.[5]

21.     After gaining access to Defendant's networks, hackers employed "RAM scraper" malware, similar to that used in the Target data breach of 2013, to gain access to the sensitive personal and financial information of consumers.[6] The RAM scraper malware was installed on Home Depot POS terminals and Home Depot failed to detect its installation and/or failed to take appropriate steps to eliminate it.[7]

22.     Following the installation of the RAM scraping malware, hackers were able to harvest consumer information from multiple POS locations. Hackers used RAM scraper malware to harvest this unencrypted information. This information was then gathered and stored on the infiltrated network and thereafter shipped in batches to external servers, controlled by the hackers.

---

[5] *Id.*

[6] *Home Depot Hit By Same Malware as Target*, KREBS ON SECURITY, http://krebsonsecurity.com/2014/09/home-depot-hit-by-same-malware-as-target/ (September 7th, 2014 at 11:14 pm).

[7] RAM scraper malware works as follows. When a card is swiped or entered at a POS terminal, the terminal processes the card data unencrypted on its random access memory ("RAM") for a short time. Hackers use RAM scraper malware, the type of malware installed on Home Depot's POS terminals, to harvest this unencrypted information.

35311

23.     Nearly every Home Depot store in the United States was affected by the Home Depot Data Breach.[8]

## The Home Depot Lacked any Semblance of Data Security

24.     As far back as 2008 Home Depot employees were concerned about the company's vulnerability to cyber-attacks.[9] Home Depot relied on outdated software to protect both its own network and systems designed to handle customer data.[10] Home Depot routinely chose lower grade security software.[11]

25.     The hackers were able to access home depot's POS terminals as a result of home depot's lax security measures

26.     Upon information and belief, Home Depot utilized weak password configurations and did not employ lockout security procedures.[12] The failure to utilize lockout security procedures allowed hackers to utilize high-speed computers

---

[8] *Data: Nearly All U.S. Home Depot Stores Hit*, KREBS ON SECURITY, http://krebsonsecurity.com/2014/09/data-nearly-all-u-s-home-depot-stores-hit/ (September 3rd, 2014 at 2:02 pm).

[9] Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1).

[10] *Id*.

[11] Ben Elgin, Michael Riley, and Dune Lawrence , *Former Home Depot Managers Depict 'C-Level' Security Before the Hack*, Bloomberg BUSINESSWEEK, http://www.businessweek.com/articles/2014-09-12/home-depot-didnt-encrypt-credit-card-data-former-workers-say (Sept. 12, 2014).

[12] As the name implies, lockout security procedures prevent a hacker from accessing a site or server after a certain number of failed login attempts from the same source.

35311

to gain access to Home Depot's system by guessing random combinations of usernames and passwords until a matching combination was found.

27.    Upon information and belief, Home Depot also failed to segregate its POS networks from its larger corporate IT networks. Home Depot's failure to isolate its POS network allowed hackers to gain access to Home Depot's entire corporate IT network and obtain massive amounts of consumer information.

28.    Reputable media reports describe numerous deficiencies within Home Depot's IT security department. Both the New York Times and Bloomberg Businessweek have reported, that: (1) Home Depot's payment systems were not configured to properly encrypt customer payment card data; (2) Home Depot's IT department experienced high employee turnover; (3) Home Depot was using outdated malware detection programs, including a seven-year-old Symantec program, Endpoint Protection 11; (4) Although Symantec released a new version of the program in 2011, Home Depot did not switch to the new program, even though Symantec has been phasing out user support for Endpoint Protection 11 and publicly announced it would end all support for it by January 2015; and (5) Home Depot IT personnel informed upper level executives that the company's security was inadequate and requested that the company take more extensive action to

35311

protect its payment processing systems, but the superior officers denied those requests and stated that the company would settle for "C-level security."[13]

29.     Upon information and belief, Home Depot's IT department and executives were aware that the company was vulnerable to an attack of the same nature as the one directed against Target in late 2013, and they were aware of countermeasures on the market which could reduce or eliminate the ability of attackers to steal customer card data from POS terminals. Nevertheless, Home Depot did not act in time to prevent the Home Depot Data Breach.[14]

30.     Upon information and belief, Home Depot was not in compliance with PCI's security standards.[15]  The company did not regularly perform

---

[13] Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1); Ben Elgin, Michael Riley, and Dune Lawrence, *Former Home Depot Managers Depict 'C-Level' Security Before the Hack*, Bloomberg BUSINESSWEEK, http://www.businessweek.com/articles/2014-09-12/home-depot-didnt-encrypt-credit-card-data-former-workers-say (Sept. 12, 2014).

[14] Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1); Ben Elgin, Michael Riley, and Dune Lawrence, *Former Home Depot Managers Depict 'C-Level' Security Before the Hack*, Bloomberg BUSINESSWEEK, http://www.businessweek.com/articles/2014-09-12/home-depot-didnt-encrypt-credit-card-data-former-workers-say (Sept. 12, 2014).

[15] Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1).

35311

vulnerability scans of its store systems, and to the extent it did engage in

vulnerability scans it did so only at data centers in Austin, TX and Atlanta, GA.

31.     Home Depot employees brought these concerns to management on

more than one occasion, but "when they sought new software and training,

managers came back with the same response: 'We sell hammers.'"[16]

### Injuries to Plaintiff and Class Members

32.     The Home Depot Data Breach could affect upwards of 60 million

credit/debit card accounts.[17]

33.     The Home Depot Data Breach could result in over three billion dollars

of fraudulent purchases. [18]

34.     Firefighters Credit Union has or will have to will have to: (a) cancel

or reissue any previously issued card that contains a magnetic stripe,

microprocessor chip, or other means for storage of information which includes, but

---

[16] *See Id.*

[17] *See* Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1); Nicole Perlroth, *Home Depot Data Breach Could Be the Largest Yet*, NEW YORK TIMES, Sept. 9, 2014, at B1(*available at* http://bits.blogs.nytimes.com/2014/09/08/home-depot-confirms-that-it-was-hacked/?_php=true&_type=blogs&_r=0).

[18] Julie Creswell and Nicole Perroth, *Ex-Employees Say Home Depot Left Data Vulnerable*, NEW YORK TIMES, Sept. 20, 2014, A1 (available at http://www.nytimes.com/2014/09/20/business/ex-employees-say-home-depot-left-data-vulnerable.html?_r=1).

35311

14

is not limited to, a credit card, debit card, or stored value card affected by the Home Depot Data Breach; (b) refund or credit any cardholder to cover the cost of any unauthorized transaction relating to the Home Depot Data Breach; (c) notify cardholders affected by the Home Depot Data Breach; (d) respond to a higher volume of cardholder complaints, confusion, and concern; and (e) increase fraud monitoring efforts.

## Class Allegations

35.    Plaintiff Firefighters Credit Union sues on its own behalf and pursuant to Federal Rule of Civil Procedure 23(b)(3) and (b)(2) on behalf of the following nationwide class of persons:

> All Financial institutions—including, but not limited to, banks and credit unions—in the United States (including its Territories and the District of Columbia) that issue payment cards, including credit and debit cards, or perform, facilitate, or support card issuing services, whose customers made purchases from Home Depot stores from April 1, 2014, to the present (the "Class").[19]

---

[19] Home Depot claims that as of September 18, 2014 the malware used in the Home Depot Data Breach has been removed from its POS system, and that as of September 13, 2014 an enhanced encryption program was active and running on all US POS systems at Home Depot locations. However, it is not clear that the data breach has actually ended, however, as the litigation progresses, the class definition may be amended as necessary to reflect the proper timeframe, when that information becomes available. *See* Press Release, The Home Depot, The Home Depot Completes Malware Elimination and Enhanced Encryption of Payment Data in All U.S. Stores (September 18, 2014), *available at* https://corporate.homedepot.com/MediaCenter/Documents/Press%20Release.pdf.
35311

36.     The class is so numerous that individual joinder of all members is impracticable.

37.     The class is ascertainable.

38.     Firefighters Credit Union claims are typical of the claims of other class members as they arise out of the same course of conduct and the same legal theories, and Firefighters Credit Union challenges Defendant's conduct with respect to the class as a whole.

39.     Firefighters Credit Union has retained able and experienced class action litigators as its counsel.

40.     Firefighters Credit Union has no conflicts with other class members and will fairly and adequately protect the interests of the class.

41.     The case raises common questions of law and fact that are capable of classwide resolution, including:

    a.  Whether Defendant failed to provide adequate security and/or protection for its computer systems containing customers' financial and personal data;

    b.  Whether the conduct of Defendant resulted in the unauthorized breach of its computer systems containing customers' financial and personal data;

35311

16

c.  Whether Defendant failed to encrypt customer payment card data;

d.  Whether Defendant improperly retained customer personal and financial information or allowed such information to be retained on its systems;

e.  Whether Defendant's actions were negligent;

f.  Whether Defendant owed a duty to Plaintiff and the Class;

g.  Whether the harm to Plaintiff and the Class was foreseeable;

h.  Whether Plaintiff and members of the Class are entitled to injunctive relief; and

i.  Whether Plaintiff and members of the Class are entitled to damages and the measure of such damages.

42.  These common questions predominate over any questions affecting only individual class members.

43.  A class action is superior to any other form of resolving this litigation. Separate actions by individual class members would be enormously inefficient and would create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims.

35311

17

## CAUSES OF ACTION

## Count I. Negligence

44.     Firefighters Credit Union incorporates and re-alleges each and every allegation contained above as if fully set forth herein.

45.     Home Depot owed a duty to Firefighters Credit Union and the Class to use and exercise reasonable and due care in obtaining and processing Firefighters Credit Union's customers' personal and financial information.

46.     Home Depot owed a duty to Firefighters Credit Union and the Class to provide adequate security to protect their mutual customers' personal and financial information.

47.     Home Depot breached its duties by (1) allowing a third-party intrusion into its computer systems; (2) failing to protect against such an intrusion; (3) failing to detect the intrusion for a period of four or more months; (4) allowing the personal and financial information of customers of Firefighters Credit Union and the Class to be accessed by third parties on a massive scale.

48.     Home Depot knew or should have known of the risk that its POS terminals could be attacked using methods similar or identical to those previously used against major retailers in recent months and years.

35311

49.     Home Depot knew or should have known that its failure to take
reasonable measures to protect its POS terminals against obvious risks would result
in harm to Firefighters Credit Union and the Class.

50.     As a direct and proximate result of Defendant's negligent conduct,
Plaintiff and the Class have suffered substantial losses as detailed herein.

## Count II. Negligent Misrepresentation by Omission

51.     Plaintiff incorporates and re-alleges each and every allegation
contained above as if fully set forth herein.

52.     Through its acceptance of credit and debit payment cards and
participation in the payment card processing system, Home Depot held itself out to
Firefighters Credit Union and the Class as possessing and maintaining adequate
data security measures and systems that were sufficient to protect the personal and
financial information of shoppers using credit and debit cards issued by
Firefighters Credit Union and the Class.

53.     Home Depot further represented that it would secure and protect the
personal and financial information of shoppers using credit and debit cards issued
by Plaintiff and the Class by agreeing to comply with both Card Operating
Regulations and the PCI DSS.

35311

54.     Home Depot knew or should have known that it was not in compliance with the requirements of Card Operating Regulations and the PCI DSS.

55.     Home Depot knowingly and deliberately failed to disclose material weaknesses in its data security systems and procedures that good faith required it to disclose to Plaintiff and the Class.

56.     A reasonable business would have disclosed information concerning material weaknesses in its data security measures and systems to Plaintiff and the Class.

57.     Home Depot also failed to exercise reasonable care when it failed to timely communicate information concerning the data breach that it knew, or should have known, compromised the personal and financial information of customers using credit and debit cards issued by Firefighters Credit Union and the Class.

58.     Home Depot's failure to disclose its inadequate security systems was particularly egregious in light of the highly publicized, similar data breaches at other national retailers in the months preceding the Home Depot Data Breach.

59.     Had Plaintiff and the Class known that Home Depot was not compliant with the Card Operating Regulations and the PCI DSS, Plaintiff and the Class would have either taken action to prevent their cards from being used for

35311

electronically processed purchases at Home Depot or required Home Depot to take immediate corrective action.

60.     As a direct and proximate result of Home Depot's negligent misrepresentation by omission, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## **Prayer for Relief**

61.     WHEREFORE, Firefighters Credit Union, on behalf of itself and members of the class, as applicable, request that the Court enter an order or judgment against Defendant including the following:

a.  Certification of the action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff as the Class Representative and its counsel of record as Class Counsel;

b.  Plaintiff and members of the class recover their costs in bringing this suit, including reasonable attorneys' fees and costs provided by law; and

c.  Plaintiff and members of the class receive such other or further relief as may be just and proper in law or in equity.

35311

## **Jury Demand**

62.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a

trial by jury on all issues so triable.


Dated: November 12, 2014                    Respectfully Submitted,


                                            /s/Tom Withers
                                            **GILLEN, WITHERS & LAKE, LLC**
                                            Tom Withers (Ga. Bar No. 772250)
                                            Post Office Box 10164
                                            Savannah, GA 31412
                                            T: (912) 447-8400
                                            F: (912) 629-6347
                                            E-mail:   twithers@gwllawfirm.com

                                            **GILLEN WITHERS & LAKE, LLC**
                                            Anthony C. Lake
                                            Georgia Bar No. 431149
                                            One Securities Centre, Suite 1050
                                            3490 Piedmont Road, N.E.
                                            Atlanta, Georgia 30305
                                            Telephone:   (404) 842-9700
                                            Facsimile:   (404) 842-9750
                                            E-mail:      aclake@gwllawfirm.com

35311

22

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (*pro hac vice forthcoming*) (MN Bar No. 202241)
Daniel C. Hedlund (*pro hac vice forthcoming*) (MN Bar No. 258337)
Joseph C. Bourne (*pro hac vice forthcoming*) (MN Bar No. 0389922)
Eric S. Taubel (*pro hac vice forthcoming*) (MN Bar No. 0392491)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
T: (612) 333-8844
F: (612) 339-6622
E-mail:   dgustafson@gustafsongluek.com
            dhedlund@gustafsongluek.com
            jbourne@gustafsongluek.com
            etaubel@gustafsongluek.com


**BERMAN DEVALERIO**
Nicole Lavallee (*pro hac vice forthcoming*) (CA Bar No. 165755)
One California Street, Suite 900
San Francisco, CA 94111
T: (415) 433-3200
F: (415) 433-6382
Email:   nlavallee@bermandevalerio.com


**BERMAN DEVALERIO**
Patrick T. Egan (*pro hac vice forthcoming*) (MA Bar. No. 637477)
One Liberty Square
Boston, MA 02109
T: (617) 542-8300
F: (617) 542-1194
Email:   pegan@bermandevalerio.com

35311

*Attorneys for Plaintiffs*

35311